**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0896n.06
Filed: December 15, 2006

No. 05-6854

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Tammy R. DeBoard, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:    Merritt, Sutton, and Griffin, Circuit Judges.


**MERRITT, Circuit Judge.**  Plaintiff Tammy DeBoard appeals the judgment of the district court affirming the denial of her application for supplemental security income benefits by the Commissioner of Social Security.  For the following reasons, we affirm the judgment of the district court.

### I.

DeBoard was almost 37 years old at the time she filed the application at issue herein.  She has a high school education but required special education classes.  Her IQ of 68 places her in the "mildly mentally retarded" range.  Her past relevant work experience consists of work  in telecommunications and as a maid and restaurant cook. DeBoard first filed an application for

disability benefits on April 20, 1999. The application was denied and she did not appeal that denial.

DeBoard filed her current application for supplemental security income benefits on March 18, 2002,

alleging disability beginning on June 15, 2001, due primarily to knee pain, stomach problems, liver

damage from Hepatitis C and depression. The application was denied initially, but on a motion for

reconsideration the Administrative Law Judge held two hearings. The motion for reconsideration

was denied because the Administrative Law Judge found that DeBoard retained the residual

functional capacity, with some restrictions, to perform a significant range of light and sedentary

work. The Appeals Council denied DeBoard's request for review and adopted the Administrative

Law Judge's decision to deny benefits as the final decision of the Commissioner. DeBoard then filed

a complaint in federal court seeking reversal of the Commissioner's decision. Both parties filed

Motions for Summary Judgment and the district court granted summary judgment for the

Commissioner and denied DeBoard's motion. DeBoard appealed to this Court, contending that the

Commissioner's finding that she was not "disabled" under the Social Security Act was not supported

by substantial evidence because the Administrative Law Judge (1) declined to consider additional

medical evidence submitted after the hearings were concluded; (2) failed to give proper weight to

an earlier Global Assessment Functioning score[1] assigned to DeBoard and (3) denied DeBoard's

request to submit additional evidence and questions to a consulting physician who evaluated

DeBoard. For the following reasons, we affirm the decision of the district court.

---

[1] The Global Assessment Functioning score rates "overall psychological functioning" on a scale of 0 to 100, with a score of 100 indicating "superior functioning." *Ladwig v. Comm'r of Soc. Sec.,* No. 00-6585, 2002 WL 1491872, at *4 n.5 (6th Cir. July 11, 2002) (citing American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)).

**II.**

In order to obtain Supplemental Security Income, DeBoard must establish that she was "disabled" within the terms of the Social Security Act. The Social Security Act defines "disability" as the inability to engage in:

> [A]ny substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in a five-step sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 416.920; *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Applying the five-step sequence, the Administrative Law Judge found that (1) DeBoard had not worked during the alleged period of disability; (2) she suffered from "severe" impairments under the regulations; (3) DeBoard's impairments, individually or collectively, did not meet or equal any of the listed impairments, including the "affective disorders" specified in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, because DeBoard was not sufficiently functionally limited; (4) she could not return to any of her past relevant work and (5) she retained the residual functional capacity, reduced by certain exertional and nonexertional limitations, to perform a significant range of light or

sedentary work in the national economy, as identified by the vocational expert. Based on these findings, the Administrative Law Judge found that Deboard was not disabled, a decision adopted by the Appeals Council and the district court on summary judgment.

In reviewing the decision of the district court, we must determine whether the Administrative Law Judge's decision was supported by substantial evidence, which is generally defined as such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). We will now review the issues on appeal.

**A. Denial of DeBoard's Request to Consider Additional Medical Evidence**

DeBoard claims that the Administrative Law Judge erred in refusing to consider medical evidence submitted after the supplemental hearing on September 22, 2003. This evidence consisted of (1) records of DeBoard's hospital visits from October 25, 1997, until February 13, 2002; (2) a letter dated September 26, 2003, from the Boyd County School District stating that DeBoard has a learning disability; (3) records from Pathways, Inc., a mental health facility that treated DeBoard in 1995, 1997 and 2003; (4) various records from DeBoard's hospital stays in 1999, 2001 and 2002 and (5) a letter dated October 1, 2003, from DeBoard asking Dr. Stuart Cooke, a consulting physician, to review this additional evidence.

The Administrative Law Judge found that evidence predating the onset of disability on June 15, 2001, is irrelevant and evidence predating the denial of DeBoard's first application for benefits

on July 29, 1999, is barred by *res judicata* because it was considered in the earlier proceeding. We do not endorse the position that all evidence or medical records predating the alleged date of the onset of disability, or evidence submitted in support of an earlier proceeding, are necessarily irrelevant or automatically barred from consideration by *res judicata.* We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence,* may help establish disability. This is particularly true when the disabling condition is progressive. *See Groves v. Apfel*, 148 F.3d 809, 810-11 (7th Cir. 1998).

However, in this case, any failure by the Administrative Law Judge to consider these records, even if error, is harmless because the records are largely duplicative of documents or information considered in deciding DeBoard's second application. For example, a hospital record from King's Daughter Medical Center that DeBoard wanted the Administrative Law Judge to consider summarizes DeBoard's visits to that hospital, but adds nothing to the information the Administrative Law Judge already had concerning DeBoard's various ailments. Moreover, the records, all of which predate the hearing, were not provided until both hearings had been completed and DeBoard offers no explanation for the tardiness of the submission. Therefore, although we cannot say that each record DeBoard sought to admit was duplicative of evidence in the record, the lateness of the submission combined with its similarity to evidence already in the record leads us to conclude that the Administrative Law Judge did not err in refusing to consider the evidence. Moreover, DeBoard has not shown how the Administrative Law Judge's failure to consider tardy and mostly duplicative evidence prejudiced DeBoard.

**B. Failure of the Administrative Law Judge Properly to Weigh or Reference DeBoard's Previous Global Assessment Functioning Score**

In 2003, DeBoard scored a 55 on a Global Assessment Functioning exam administered by Dr. Cooke, the consulting physician, indicating moderate symptoms and moderate difficulty in social, occupational or school functioning. DeBoard argues that the Administrative Law Judge erred in not giving the proper weight to an earlier Global Assessment Functioning score of 50 that DeBoard received when the test was administered by Pathways, Inc., a medical health care facility that treated DeBoard in the 1990s. A score of 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *Pasco v. Comm'r of Soc. Sec.*, No. 03-4358, 2005 WL 1506343, at *10 n.15 (6th Cir. June 23, 2005) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994)).

"The [Global Assessment Functioning] score is a subjective determination that represents 'the clinician's judgment of the individual's overall level of functioning.'" *Wesley v. Comm'r of Soc. Sec.*, No. 99-1226, 2000 WL 191664, at *3 (6th Cir. Feb. 11, 2000) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994)). We have previously held that the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (While a Global Assessment Functioning score may be of "considerable help," it is not "essential" to determining an individual's residual functional capacity.); *see also Kornecky v.*

*Comm'r of Soc. Sec.*, No. 04-2171, 2006 WL 305648, at \*13-\*14 (6th Cir. Feb. 9, 2006) ("[A]ccording to the [Diagnostic and Statistical Manual's] explanation of the [Global Assessment Functioning] scale, a score may have little or no bearing on the subject's social and occupational functioning . . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a [Global Assessment Functioning] score in the first place.")

Moreover, the Commissioner "has declined to endorse the [Global Assessment Functioning] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [Global Assessment Functioning] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, No. 04-16371, 2005 WL 1317040, at \*6 n.5 (11th Cir. June 2, 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). Accordingly, we have affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower. *See, e.g., Smith v. Comm'r of Soc. Sec.*, No. 02-1653, 2003 WL 22025046 (6th Cir. Aug. 27, 2003) (Global Assessment Functioning score of 48); *Nierzwick v. Comm'r of Soc. Sec.*, No. 00-1575, 2001 WL 303522 (6th Cir. Mar. 19, 2001) (Global Assessment Functioning score of 35); *Thurman v. Apfel*, No. 99-3587, 2000 WL 491673 (6th Cir. Apr. 20, 2000) (Global Assessment Functioning score of 50).

DeBoard's argument that the Global Assessment Functioning score of 50 she received when she was tested by Pathways, Inc., should have received more weight from the Administrative Law Judge than the score of 55 she received when tested by Dr. Cooke, a consulting physician, is based on DeBoard's identifying Pathways, Inc., as a "treating source." Generally, the medical opinion of a claimant's treating physician is entitled to more weight than that of a non-treating, or consulting,

physician.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Whether the source of a medical opinion is a "treating source"  requires a fact-specific inquiry.  There is a question as to whether Pathways, Inc., would qualify as a "treating source" in this case.  Generally, we look to how many times the source treated claimant over a certain period of time and how many other sources were treating claimant during the same period for the same condition.  There is no set number of times a patient must be seen by a single physician or facility for that doctor or facility to be considered a "treating source."  Here, DeBoard received treatment by Pathways, Inc., four times between November 1995 and February 2003, a period of over seven years, during which time she received extensive treatment at other facilities and by other physicians.

We will assume that the Administrative Law Judge viewed Pathways, Inc. as a treating source for DeBoard's depression and other psychiatric conditions.  There is no indication in the opinion that the Administrative Law Judge did not give weight to Pathways' diagnoses.  For example, he mentioned that the findings by Dr. Cooke were "consistent"  with DeBoard's history of treatment at Pathways.  ALJ Decision at 3.   He also noted the limitations in DeBoard's mental residual functional capacity took into account her treatment at Pathways.  *Id.* at 4-5.  This and other references to Pathways in the opinion demonstrate that the opinions and diagnoses of Pathways were taken into consideration in reaching the decision.  Any failure to reference Global Assessment Functioning scores or to compare different scores attributed to the same subject, without more, does not require reversal.

**C.  Denial of DeBoard's Request to Submit Questions and Additional Evidence to Dr. Cooke**

DeBoard also argues that the Administrative Law Judge erred in denying her request to

submit questions and additional evidence to Dr. Cooke after the hearings. DeBoard's questions and additional medical evidence were mostly aimed at an effort to ascertain Dr. Cooke's rationale for assigning DeBoard a higher Global Assessment Functioning score than that assigned by Pathways, Inc. Generally, an Administrative Law Judge need recontact a medical source only if the evidence received from that source is "inadequate" for a disability determination. *See* 20 C.F.R. § 404.1512(e); *Persell v. Sec'y of Health & Human Servs.*, No. 93-1759, 1994 WL 520859, at *4 (6th Cir. Sept. 21, 1994).

A disagreement between two medical professionals does not render the opinion of one "inadequate" under the regulations. Dr. Cooke reviewed the records from Pathways and conducted his own exam and arrived at a score different from that assigned by Pathways. DeBoard submits nothing to demonstrate that the score assigned by Dr. Cooke on the Global Assessment Functioning exam was inadequate except that it did not match the score she received from Pathways. The Administrative Law Judge stated that he reviewed the whole medical record and he made specific references in the opinion to the treatment received by DeBoard at Pathways.

DeBoard has not shown how remanding the case to include Dr. Cooke's opinion on the difference between the Global Assessment Functioning scores would alter the Administrative Law Judge's decision. A single Global Assessment Functioning score is unlikely to change the Administrative Law Judge's decision when he provided many other reasons for finding that DeBoard was not disabled and DeBoard did not demonstrate any basis for believing that Dr. Cooke would change his position on the score he gave to DeBoard.

Furthermore, as pointed out by the district court, the Social Security Administration does not rely on Global Assessment Functioning scores for "use in the Social Security and Supplemental Security Income disability programs" and has indicated that the scores have "no direct correlation to the severity requirement of the mental disorders listings." *Wind v. Barnhart*, No. 04-16371, 2005 WL 1317040, at *6 n.5 (11th Cir. June 2, 2005).

## Conclusion

Substantial evidence supports the Administrative Law Judge's finding that DeBoard was not disabled during the relevant period, and his refusal to consider additional medical records or to allow questioning of Dr. Cooke about DeBoard's Global Assessment Functioning score from Pathways, Inc. do not constitute reversible error.

Based on the foregoing, we affirm the district court's judgment that substantial evidence supported the Commissioner's decision not to award DeBoard disability benefits.